# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                               : CHAPTER 11
                                    :
WORLD IMPORTS                       :
                                    :
            DEBTOR                  : BANKRUPTCY NO. 13-15929 SR
_____

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court are the Requests of Sunrise Furniture Co. Ltd (Sunrise) and Weisheng Zhangzhou Industrial (Weisheng) for Payment of Administrative Expenses. Both the Debtor and the Official Committee for the Unsecured Creditors oppose the Requests. For the reasons set forth below, the request of Sunrise will be denied in its entirety. The request of Weisheng for the same relief will be granted in part and denied in part.[1]

*Administrative Claim*
*For the Sale of Goods*

Sunrise and Weisheng base their entitlement to administrative priority upon their having sold goods to the Debtor within a short period of time prior to its bankruptcy filing. The Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this

---

[1] As this matter involves allowance or disallowance of claims against the estate it is within this court's core jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B).

title, including---the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). The language of the statute provides for the allowance of an administrative claim provided the claimant establishes: (1) the claimant sold "goods" to the debtor; (2) the goods were *received by the debtor* within twenty days prior to filing; and (3) the goods were sold to the debtor in the ordinary course of business. *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 133 (Bkrtcy.D.Del. 2009) (emphasis added).

This section is an exception to the treatment of unsecured creditors who supply goods or services prepetition. *In re Pilgrim's Pride Corp.*, 421 B.R. 231, 240 (Bkrtcy.N.D.Tex.2009). It is intended to work in conjunction with § 546(c) for sellers who have valid reclamation claims. *Ningbo Chenglu Paper Products Mrf. Co., Ltd v. Momenta, Inc. (in re Momenta, Inc.),* 11-cv-479, 2012 WL 3765171, at *4 (D.N.H. Aug. 29, 2012). Section 503(b)(9) "provides a supplemental remedy for those sellers who would be preferred reclamation sellers, but for a minor disqualification under section 546(a)." *Id.* Not being intended to create a new class of creditors, § 503(b)(9) is to be strictly construed. *See Howard Delivery Serv. Inc. v. Zurich Am. Insur. Co.,* 547 U.S. 651, 655, 126 S.Ct. 2105, 2106 (2006) (noting discrete exceptions to the general equality principle must be "clearly authorized by Congress"). A claimant seeking allowance of an administrative claim bears the initial burden of proof. *Goody's,* 401 B.R. at 137 n. 27.

*Record*

The matters have been submitted to the Court on a stipulated evidentiary record and there are no facts in dispute. The parties agree on two of the three elements required for priority under § 503(b)(9): (1) that the claimants sold goods to the Debtor and (2) that such sales occurred in the ordinary course of the Debtor's business. That leaves only the question of whether the Debtor received the goods within the 20 days prior to bankruptcy. In this regard, the operative dates, in particular, are not in dispute and are found in the supporting documents attached to both claims. Each claim is comprised of more than one order for the purchase of goods. For each such order, there is a set of four documents: Purchase Order, Packing List, Commercial Invoice, and Bill of Lading. As to the Sunrise claim, two shipments of goods originated from China and were shipped from Shenzhen on June 19 and June 23, 2013. Both of the Sunrise shipments were delivered directly to customers of the Debtor (i.e., "drop-shipped") on July 13 and July 18, 2013. As to the Weisheng claim, three shipments of goods likewise originated from China and were shipped from Xiamen on June 13 and June 17, 2013. Two of the three Weisheng shipments were "drop-shipped" and the third shipment was delivered directly to the Debtor. These deliveries occurred on July 13 and July 17, 2013, respectively.

*Issue*

There are two issues for the Court to address, the first is legal and the second factual. The *legal issue* arises because four of the five shipments were delivered directly to the Debtor's customers. Just one shipment went directly to the Debtor. It is the

Debtor's position that a drop-shipment is not received by the retail merchant and so it can never qualify for administrative priority status under § 503(b)(9).

The *factual issue* pertains to the one Weisheng shipment which did go directly to the Debtor. For that shipment to attain priority, the record must reflect that it was received by the Debtor within 20 days prior to bankruptcy.

*Drop Shipments
and Receipt*

On the question of whether a retail merchant ever "receives" drop-shipped goods the Debtor maintains that every case to consider the question has held that § 503(b)(9) applies only if the debtor physically received goods and not merely the value of the goods with in the requisite time period. Debtor's Objection, 4. The claimants respond that the Uniform Commercial Code recognizes that receipt of goods by a buyer includes receipt by the buyer's representative or subpurchaser. Sunrise/Weisheng Letter Brief, 5. Other than that statutory authority, the claimants rely on an article in a trade journal wherein the author opines that drop-shipped goods should be deemed to have been received by the debtor for purposes of § 503(b)(9). *Id.*

Of the four cases cited by the Debtor for the proposition that drop shipments are never received by a debtor, the Court finds two of the four cases particularly helpful to its analysis.[1] In *In re Plastech Engineered Products, Inc.*, 2008 Bankr. LEXIS 3130 (Bkrtcy. E.D.Mich. 2008), the seller of goods argued that although the goods were

---

[1] The other cases, which are somewhat on point, are *In re Circuit City Stores, Inc.*, 432 B.R. 225 (Bkrtcy.E.D.Va. 2010) and *In re Pridgen,* 2008 WL 1836950 (Bankrtcy.E.D.N.C. April 22, 2008). These involved goods delivered to the debtor on a consignment basis. The debtor in *Circuit City* housed goods from Panasonic in its warehouses until the goods were sold to consumers. Panasonic's request for administrative priority for unpaid goods was denied because the debtor did not receive title to the goods until the sale of the goods to customers. Likewise the debtor in *Pridgen*, a grocer, never obtained title to the gasoline which it sold to its consumers from its store. The gasoline supplier was denied administrative priority for the same reason.

delivered directly to a customer of the debtor, the debtor need not receive the goods in order to claim administrative priority. *Id.* at *5 Instead, argued the seller, the debtor's receipt of the value of the goods should suffice. The Bankruptcy Court rejected the reasoning based on the express language of § 503(b)(9). *Id.* at 9

The case which is most useful for present purposes is the District Court of New Hampshire's decision in *Ningbo, supra.* In that case, the Court undertook a thorough analysis of the history of section 503(b)(9) to determine the meaning of "receipt"

> Congress did not define the term "received" as it is used in Section 503(b)(9). Nor is that term defined elsewhere in the Bankruptcy Code. But it appears that Congress intended that the term, as used in Section 503(b)(9), should be construed consistently with the reclamation section of the Code, Section 546(c). As the bankruptcy court correctly noted, changes made to the Bankruptcy Code in 2005 suggest an intent to create a priority administrative expense as a supplemental remedy *for reclamation sellers,* and not, as Ningbo argues, a priority remedy for all sellers who deliver goods pursuant to a contract with the debtor and within twenty days preceding bankruptcy.
>
> Before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Section 546(c)(2) allowed a " 'court [to] deny reclamation to a seller with such right of reclamation that has made such a demand," but "only if the court' " awarded an administrative expense claim or secured the seller's " 'claim by a lien.' " *Dana Corp.,* 367 B.R. at 414 (quoting 11 U.S.C. Sec. 546(c)(2) prior to BAPCPA). In other words, before BAPCPA, an administrative expense priority served as an alternative remedy to reclamation, but only if the seller met Section 546(c)'s notice requirement. [citations omitted]
>
> In 2005, BAPCPA modified the reclamation rules under an amendatory provision titled "Reclamation." *See* Sec. 1227 "Reclamation," Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, § 1227(b), 119 Stat. 23, 119–200. The provision deleted language in Section 546(c)(2) authorizing courts to allow an administrative expense claim ( *i.e.,* allow a cash payment in

5

> lieu of reclamation) where a seller had otherwise made a proper reclamation demand. *See In re TI Acquisition, LLC,* 410 B.R. 742, 745–46 (Bankr.N.D.Ga.2009) (detailing legislative changes). It also added new language to Section 546(c) specifying that, even if "a seller of goods fails to provide notice in the manner described [in Section 546(c)(1), it] still may assert the rights contained in Section 503(b)(9)." 11 U.S.C. Sec. 546(c)(2). Finally, it added Section 503(b)(9), providing an administrative priority claim for goods the debtor received within twenty days before bankruptcy. *See In re TI Acquisition,* 410 B.R. at 746.

*Ningbo, supra,* 2012 WL 3765171, at **4-5. While "Congress meant to expand and clarify the rights of reclamation sellers, [it] did not intend to quietly create a new and expansive creditor class entitled to a unique priority." *Id.* at *5 The *Ningbo* Court also observed that such an intent comported with the policy behind Chapter 11 reorganizations:

> [A] narrow reading of Section 503(b)(9), that reserves its remedy for would-be reclamation sellers, would likely enhance prospects for successful reorganization, while respecting creditor equality principles. Because the debtor must set aside cash to pay priority administrative expenses, the larger the class of creditors entitled to 503(b)(9) relief, the larger the potential cash reserve needed, and the less likely a debtor will successfully reorganize. That is not an insignificant consideration. *See In re Plastech Engineered Prods., Inc.,* 394 B.R. 147, 151 (Bankr.E.D.Mich.2008) (Section 503(b)(9) "creat[es] a large and potentially insurmountable cash hurdle for a debtor to confirm a plan").

*Id.* at *6 The District Court construed the phrase "received by the debtor" in this context to mean "possessed by the debtor, either actually or constructively." *Id.* It therefore affirmed the Bankruptcy Court's holding that a drop-shipment to a debtor's customer does not constitute even constructive possession for purposes of § 503(b)(9). *Id.* at *7 The Court finds the District Court of New Hampshire's reasoning to be persuasive and will be guided by it. As the goods delivered under drop-shipment arrangements were not

6

"received" by the Debtor for purposes of § 503(b)(9), the Sunrise and Weisheng drop-shipments are not entitled to administrative priority.

*Direct Shipment*

That leaves the remaining portion of the Weisheng claim, which is based on goods shipped directly to the Debtor. In its Certification in support of its claim, Weisheng lists that shipment as having been placed on board a vessel in China on June 13, 2013. As matters are, that fact is dispositive in favor of Weisheng's right to administrative priority for this portion of its claim. The parties will recall that this Court's June 18 Opinion ruled adversely to a virtually identical request made by two other claimants.[2] *See In re World Imports, Ltd.*, 511 B.R. 738 (Bkrtcy.E.D.Pa. 2014). There the claimants argued that although the goods in question were placed onboard the vessel more than 20 days prior to bankruptcy, the Debtor "received" them within 20 days prior to bankruptcy when it took actual physical possession of the goods. The Court rejected this premise. Based on international trade terms, the Court held that the receipt of goods occurred when the goods were placed on the ships in China. That date was more than 20 days prior to bankruptcy. Based on that finding, the request for priority was denied.

In support of the instant claims, Weisheng and Sunrise essentially ask the Court to reconsider its holding that receipt for purposes of international sales of goods occurs when goods are placed on the ship for transport. This is a bit puzzling – as to at least Weisheng -- given that such a holding supports Weisheng's claim that its direct

---

[2] Counsel for Sunrise and Weisheng was in attendance at the hearing where the Court heard the similar claimants' request for administrative priority. Because the Sunrise and Weisheng claims were not technically before the Court on that date, those claimants were given the opportunity to decide whether to press their claims depending on the court's ruling in the prior matter. They have done so, but their claims largely fail for the same reasons..

7

shipment is entitled to priority. In any event, the Court declines to reconsider its prior ruling, as it sees no basis to depart from the legal conclusions reached in the June 18 ruling. The Court will, however, address the arguments raised by the claimants that alteration or amendment is warranted.

Sunrise and Weisheng offered two grounds for reconsideration. First, while they concede that the contract is governed by a treaty (the CISG (Contract of Goods) which incorporates international trade terms (i.e., "Incoterms"); they maintain that those legal sources fail to define the term "receipt." Sunrise/Weisheng Letter Brief, 3. That, they say, requires the Court to look elsewhere for a definition. *Id.* Second, they argue, in the alternative, that the trade terms incorporated by the CISG (the Incoterms) in fact provide a ready definition from which the meaning of the term "receipt" can be found. *Id.*, 4-5

The Court dismisses these arguments. As to the first, the Court sees no dispositive omission in the Incoterms® 2010. As previously noted, among the Incoterms is a definition of the shipping term "FOB." That was the term under which the shipment in the June 18 Opinion was shipped. The Court held the definition of FOB to mean that the buyer took delivery of the goods when they were placed on board the ship in China, and that, in turn, was when "receipt" occurred. Its opinion has not changed in this regard. There is, then, no reason to look to sources outside the Incoterms for a definition of "receipt."

As to the second argument; to wit, that the Court failed to properly note in the Incoterms® 2010 Introduction an explanation of the term FOB that would indicate that "receipt" occurs after the goods are physically delivered to the buyer, the Court finds the argument to misconstrue the terms. In support of its claim that receipt also occurs when

8

the goods are offloaded at the end of the shipment the claimants rely on the following language:

> In the second class of Incoterms® 2010 rules, the point of delivery and the place to which the goods are carried to the buyer are both points, hence the label "sea and inland waterway" rules.

Incoterms® 2010 Introduction, 7. According to the claimants, "[t]his passage distinguishes the point of delivery (i.e, where the goods are handed over to the common carrier) from the place where the buyer takes possession of them through physical receipt." Sunrise/Weisheng Letter Brief, 4. In other words, say the claimants, under an FOB shipment the goods are delivered to the Chinese port but are not received until the buyer takes physical possession of the goods.

Before parsing the language of this excerpt, a preliminary point is in order. This excerpt does not come from a specific definition of an Incoterm. It appears in the Introduction to the Incoterms® 2010. The Introduction serves to generally explain the amendments to the previous edition.[3] The Introduction is akin to dicta. That alone should caution against assigning emphasis to it.

But more importantly, the claimants have taken this excerpt from the Introduction out of context. The entirety of the excerpt states as follows.

---

[3] The Incoterms®2010 is the current version and amends the Incoterms® 2000.

> **Main features of the Incoterms® 2010 rules**
> …
> 2. Classification of the 11 Incoterms® 2010 rules
>
> The 11 Incoterms® 2010 rules are presented in two distinct classes:
>
> <u>RULES FOR ANY MODE OR MODES OF TRANSPORT</u>
>
> EXW   EX WORKS
>
> FCA   FREE CARRIER
>
> CPT   CARRIAGE PAID TO
> CIP   CARRIAGE AND INSURANCE PAID TO
>
> DAT   DELIVERED AT TERMINAL
> DAP   DELIVERED AT PLACE
> DDP   DELIVERED DUTY PAID
>
> <u>RULES FOR SEA AND INLAND WATERWAY TRANSPORT</u>
>
> FAS   FREE ALONGSIDE SHIP
> FOB   FREE ON BOARD
>
> CFR   COST AND FREIGHT
> CIF   COST INSURANCE AND FREIGHT
>
> The first class includes the seven Incoterms® 2010 rules than can be used irrespective of the mode of transport selected and irrespective whether one or more than one mode of transport is employed. EXW, FCA, CPT, CIP, CAT, DAP and DDP belong to this class. They can be used even when there is no maritime transport at all. It is important to remember, however, that these rules *can* be used in cases where a ship *is* used for part of the carriage.
>
> <u>In the second class of Incoterms® 2010 rules, the point of delivery and the place to which the goods are carried to the buyer are both points, hence the label "sea and inland waterway" rules.</u> FAS, FOB, CFR, and CIF belong to this class. Under the last three Incoterms rules, all mention of the ship's rail as the point of delivery has been omitted in preference for the goods being delivered when they are "on board" the vessel. This more closely reflects modern commercial reality and avoids the rather dated image of the risk swinging to and fro across an imaginary perpendicular line.

Incoterms® 2010, 6-7 (emphasis added)

Viewed in context, this excerpt from the Introduction serves not to define a term but to differentiate some terms from others. Specifically, it distinguishes the shipping terms that involve maritime transport. In such cases two ports are necessarily involved: the port of origination and the port of arrival. The first port is where the *delivery* of the goods occurs. The second port is the port to which they are *carried*. This cannot reasonably be construed to imply that receipt of goods by the buyer occurs either over some continuum or at the end of the journey. Rather, the excerpt explains that the 4 Incoterms for sea and inland waterway transport---among which is FOB---define delivery to occur the moment the goods are placed on board. It simply eliminates the antiquated notion that cargo crossing the ship's rail marks the point of its delivery.

The body of the text of the Incoterms® 2010 contains the definition of "receipt" pertinent to the Court's June 18 Opinion. The text devotes a chapter to the definition of FOB, which is the shipping term relevant to both the present transaction and the sale at issue in the Court's prior ruling.  Again, under an FOB shipment, delivery occurs when the goods are placed on board at the port of origin.  Incoterms® 2010, FOB, 88 ¶ A4 That is when the buyer must take delivery of the goods. *Id.*, ¶ B4. That is why the Court previously determined that receipt of the goods occurred in China when they were placed on board. The Court reaches the same conclusion in this case.

*Conclusion*

The entirety of the Sunrise claims and the drop-shipment portion of the Weisheng claim will be denied administrative priority. The portion of the Weisheng claims

represented by Bill of Lading OERT203702C00591 will be allowed as an administrative expense.[4]

    An appropriate order follows.

                           By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: September 10, 2014

---

[4] As to this sale, the shipping documents relative to it reflect that the goods in question were placed onboard ship in China within 20 days of the Debtor's bankruptcy filing; they were therefore received by the Debtor within the requisite time period and thus qualify for administrative priority.